The next case on our calendar this morning for oral argument is number 203955, Cassiotis v. New York Black Car Operators. Why don't you pause for a second until the folks have shut the door and left and settled. Okay. Okay. Okay. Please proceed. Good morning, Your Honor. It's Richard Dolan for the appellant. I want to begin very briefly. Mr. Dolan, I'm sorry. I'm going to ask you if you could pull your mask up a little bit, please. Sure. Thank you very much. You keep falling down. I apologize for that. I know it's annoying. It's hard for everybody. Can I ask a jurisdictional question? It's the first issue I'm going to address. Oh, okay. Okay? I think there are three bases for jurisdiction, and I recognize that it got very brief commentary at all in the papers. The parties are agreed, but I understand the court has to look at it independently. I think there are three bases. The one is that's mentioned in the brief, where all that remains below is a ministerial calculation. Liability is obviously decided. The only issue continuing below relates to damages. That is simply an arithmetical sum of the amounts charged to class members for the surcharge on these non-cash tips. The information about that, particularly the specifics as to the amounts and the identity of the class members, is not in the possession of the fund. So the only discovery that's going on is from the, essentially, the dispatch bases that have that information to get the amounts and the names. And then it's just a question of adding it up. It's essentially a task for a paralegal. That's what's going on. You're seriously saying that the damages in this case would be a task for a paralegal? It's just a question, Judge, of getting the invoices, adding up who paid the tip, because most of this is Uber, so it's going to be just members of the public. Yeah, but it would be members of the public who gave different tips in different amounts, right? Yes, and it's going to be listed on the invoice, and it's just a question of plucking it off and adding it up. But it's not just Uber, right? Has the class period been settled at a five-year period? Is that right? Yes, I think it's a six, actually. But it's not just Uber. There's Lyft. There are other services. That's correct. That's what's going on. Each one of the billing entities, the bases, are being asked to provide that information because the fund does not have it. That's what's going on. I recognize, if I could go to the second basis. Okay, let's hear number two. Number two, the order below is effectively an injunction. If you look at how the issue was raised in the colloquy on October 15th with the judge, Judge Halpern raised it himself, saying, I'm not sure an injunction here would be necessary because once I decide what the statute means, isn't that going to sort of resolve everything? And he was going back and forth essentially about whether it was necessary. Well, actually, I mean, what Judge Halpern says is that the plaintiff has withdrawn his claim for a permanent injunction, and the defendant has agreed to abide by this court's ruling, subject, of course, to the defendant's right to appeal and or application for a stay. Yes, and just after that he says, that is now the order of the court. It's no longer an agreement of the parties. It's an order of the court that we have to abide by the court's ruling. That order, which proceeds prospectively, it governs us now. It's why after the court's ruling we changed. And if you hadn't changed it, your understanding is that the court would have entered an injunction. No, I think we would be in contempt. Okay. So you're being compelled to change it. Yes. But, in fact, formally it doesn't take the form of an injunction. So you're asking us to treat it functionally as the same thing as an injunction. I think the basic law is, and I'd be happy to submit something supplemental on this, is that the substance and effect govern, not the name. And in substance and effect, this is an order we have no ability to say, I don't think so, I'd rather not. If we did that, we'd be in contempt. So the court says defendants shall abide by the court's ruling and cease and desist from imposing and collecting a surcharge. Yes. That's what you're saying. Yes. And if those two don't work, I would suggest that the court simply hold the appeal in abeyance, let us go back and get the 54B certification. This case clearly meets all the standards. The issues before you are distinct. They are dispositive. And there are certainly grounds for a reasonable difference of opinion. But, I mean, this is not a technicality. I mean, I was sort of surprised that nobody thought to either ask for permission to file an interlocutory appeal or, you know, made clear what the basis for appealing was. Judge, all I can say is that one of the few benefits of getting older is that you learn the benefit of prudence. The lawyers thought this was clear. When I looked at the briefs, I could see that the court has an independent obligation to look at it. It was the first thing I wanted to talk about. I understand that perhaps prudence would have dictated a different approach, but it played out the way it did. And it is the only issue, I think, in this case in which the appellant and the appellee are actually in agreement that there is jurisdiction here. Because the panel has put in effort, if you are not convinced of the two bases for appellate jurisdiction I gave you, I do ask that we have an opportunity to get the 54B. I don't think it will be a problem getting it, as I say, because I think this case clearly meets all the standards. If I could turn quickly to the merits. If I could just clarify one thing. Are you saying you discontinued applying the surcharge because of the district court's ruling or no? Yes. I thought you discontinued earlier. No. Is that wrong? It was after. It was after. Yes. The court's order was in October, and you discontinued when? I believe it was in December. February. February. Yeah, the following February. Okay. Yes. Okay. Because it didn't look to me like it was followed directly from. Yeah. Okay. But you're saying here that in the absence of the district court's order, you would still be charging the surcharge on the tips? Yes. Okay. Yes. Yes. And that relates to the view of the merits, and I'll get to that very briefly. The principal issue in this case is just a matter of statutory interpretation. What happened below is that even though the statute has an express definition of a critical term, the district judge concluded that applying that definition would be illogical, and so he didn't do it. He came up with his own definition. Respectfully, we're not aware of any other case that has approached statutory interpretation quite that way. When the statute has an express definition of the term, courts apply it. They don't look for reasons not to apply it or to come up with their own definition, but that's what happened. Well, he did seem to think that it wasn't even within the statutory definition, right, because he thinks that the tip is not a payment for a covered service, right, that it's something else. I guess but the statute doesn't say payment. The statute says invoices, right, so I guess he thinks that some parts of the invoice are applicable to the covered service and maybe a part of the invoice is not, which is the tip. And, Judge, if you look at just how that reasoning plays out, covered service is actually defined. There's no question. It's simply geography. It's essentially to figure out what's subject to regulation in New York versus, frankly, what's subject to regulation in either Connecticut or New Jersey. Well, when somebody is charged for the tip, somebody gives a voluntary tip and then gets charged for it, are they making a charge? Is it a payment for the dispatch? Yes. Just as if you're in a restaurant and you're leaving a tip for the waiter, it's part of the cost of the service of the meal. You're actually tipping them because you like the service and most of it does. And there's no dispute here that the tip appears on the invoice. Yes. Can I ask you a question about how this works or how it especially worked when they drafted the statute, when the legislature drafted the statute? So I take it that the client of the black car company is some company and then there's somebody who's riding the car and then they fill out, they offer a voluntary gratuity, and then the black car service sends an invoice that includes the gratuity that the passenger filled out to the company that's paying for the ride, right? Yes. Now at that point, does the company that's the customer of the black car service, does it have discretion not to pay the gratuity? Not to pay the gratuity? Right. So I'm a passenger. Yes. Right. And so I filled out the form where I said I'm going to give a gratuity of 10% or whatever. And so then it appears on the invoice that goes back to my employer. Does my employer have discretion as to whether it will pay the gratuity that I filled out? To the driver? Right. No. So at that time, it's a mandatory obligation on the part of the company that's the customer of the black car service. Yes. And if they didn't pay it, just as a yes, the short answer to all of that is yes. It's paid to the driver. That's what it's about. Well, in follow-up to that, you said in your briefing that the TIP income increases the driver's average weekly wages and therefore the fund's exposure on workers' comp. I didn't see any authority cited for that. Is it established in New York tax law or how workers' comp statutes work in New York that the TIP income paid in this way increases the fund's liability for workers' comp? Should the driver be injured? Yes. It's not increases the liability. It increases the amount that the driver would be entitled to if, for instance, there's a crash and he's totally disabled. So where is that established? I'm not aware of what the source for that is in workers' comp law. In the record, it's established from the affidavits of the officials of the fund who also happen to be running some of these black car companies. Well, it's not just the – I don't think Judge Carney is asking a factual question but a legal one. So my understanding is that the New York State workers' comp law defines wages to include the TIPs. And so then if somebody has a workers' compensation claim and you're determining they're going to get a percentage of their wages, it would include their TIP increase. Yes, I can tell you that's certainly how it works. But my understanding also is that the New York law exempted explicitly black car drivers from the ordinary operation. And I wasn't sure if that exemption had been either repealed or wasn't applied or whether I'm just mistaken in that. It's my understanding, Judge, and I confess I don't handle these cases personally, the workers' comp stuff, but I'm told that that's exactly how it works when they're figuring out what the wage base is to make an award, assuming the driver is incapacitated or whatever. The total compensation to the driver, which is determined essentially by the tax return, is included. But, again, we look to New York State law as establishing that, and that is clear. Yes. Okay. Thank you. So getting back to – We've taken – yeah, we took some time on jurisdiction, which obviously was important, and you're over your time, but I think there are a number of issues I would like you to go ahead to address. Okay. Then rather than going through it, if there are issues the court wants me to address, just – I would like you to address, moving forward, if we were to disagree with you on the statutory interpretation question, I was struck by the absence of much information about reliance interests that the fund might have had in performing its actuarial work and creating reserves and paying out claims and so on. I would have expected, given the volume of charges here, that you would have detailed data about how a change in practice and eliminating the 2.5 percent surcharge would wreak havoc in your actuarial calculations and make it difficult, for example, for you to pay legitimate claims of drivers. But I saw nothing like that. Okay. Can you address what reliance interests there might be? Or maybe I'm mistaken. Maybe they're not. No, you're not mistaken, Judge. This rule about surcharge on tips has been in effect since 1999, so it's 20-odd years of history. Actuarially, the percentage that's set is a function of the expected revenues. So there's certainly millions of dollars in play in this case. Would that wreak havoc on the fund? I think that may be overstating it, frankly, but it was certainly – I mean, the basic point is there's no free lunch in life. If they don't raise the money to pay what is needed actuarially and because the surcharge has to go, what's going to change eventually is the percentage that's used on all the other aspects that are in play. Well, since you did make the change last February, has the fund had to make any adjustments immediately in the interim? Immediately, no, Judge, and it's partly because of why we're all wearing these masks. Okay. And what the future – I can assure you that it's under – it's giving you a close look, but everything has been down in not only the trips but also fewer trips. Cranks. You get fewer injuries, okay? Yeah. So it impacts across the board. But definitely does it have a financial impact on us in the millions of dollars? Yes. Okay, thank you. Fine. I think my colleague has another question for you right now. That's fine. Okay, we'll proceed to hear from your adversary. Thank you, Judge. Thank you. Good morning, Your Honors, Mr. Dolan, Mr. Allen. May it please the Court. My name is Jeff Carton. I'm joined by my colleague, Amber Wallace. Together we have been prosecuting this matter since its inception in 2018. I have some prepared remarks, which I'm immediately going to stray from. In fact, in response to Judge Carney's question of Mr. Dolan, the fund did change the percentage from 2.5% to 3%. The current amount that is being collected with respect to black car transportation invoices and billings, obviously, for the dispatch, transportation, pickup, and discharge is now at 3%. And that was changed in conjunction with the – No, that was changed because they had the prerogative to do so. That was authorized by the – When was it changed? Enabling statute. I believe that was changed in the beginning of the year. And I've heard nothing, nor is there any evidence in this record, that the fund has had any financial difficulties, you know, whatsoever as a result of the cessation of the practice. With regard to the cessation of the practice, to return to Judge Sullivan's initial question, I believe Mr. Dolan is not entirely accurate in terms of what transpired before Judge Halpern at the time he issued his ruling. Judge Halpern effectively gave the fund a choice. He said if you want to move for a stay pending appeal, that is your prerogative to do so, and I will certainly entertain it, and I will take up both, you know, briefing in favor and in opposition of it. Alternatively, you can obviously proceed at your risk. I've issued a ruling. I don't think it would be prudent, obviously, if you were to continue to do something in the absence of an appellate reversal. And the fund reached a decision. They reached a decision voluntarily with me through their counsel, which was that I would agree to withdraw my claim for a permanent injunction if they would agree to abide by the judge's ruling. And that was it. It was simply a function that they would stop pending an appeal. But it does enter an order ordering them to abide by it, right? Yes, effectively treating the order as such. There was no requirement, though, that they change the policy during the pendency of this appeal. They very well could have continued effectively not to impose the collection on non-judges. Well, fine, but whether they stop collecting it as a matter of practice or whether they actually change the rule to stop collecting it, I mean, the effect is the same. They are changing the collection in response to the district court's order. The effect is the same. The difference, however, Your Honors, is that they went through the formalistic steps of amending their plan of operation, informing their member bases, and their member bases, in turn, who are responsible obviously for the imposition and collection of the fund, were instructed no longer to charge it. All right. But I want to be clear about this. There's an agreement between the parties to do it this way. They withdraw or you withdraw the motion for a permanent injunction, right? Correct. And then the judge so orders it. Correct. That's what obviously is procedural a little. Well, it is procedural. Okay. But so then in your view, either party is free now to appeal that agreement? Yes. I think the ultimate important, Mr. Dolan is correct, if there's one area in which we can agree, it's that the underlying decision was final determination of the issue, that their appellate rights were intact. It is a judgment on liability. That's what this is. Correct. You guys agreed among yourselves that you weren't going to need an injunction for the interim, but there's still discovery taking place and damages to be decided. And so how is that a final order? Well, it's a final order on liability. Okay. It's a final order on liability. And your view is a final order on liability. And this happens all the time. The courts issue, I'm going to rule on liability and then we'll do the rest of this going forward. Your view is that gives you an immediate right like a state court to an interlocutory appeal. It does. And it could also have been a permissive one under the class certification. But nobody's appealing class certification. I think what happened, again, it's a little unusual in terms of how it transpired. But for all intents and purposes, we are – there is in effect a court order on the permanent injunction claim on the liability issue because the court said don't do it. They agreed we're not going to do it. They changed their practice. And now we're here before you to make a determination as to whether the district court properly or improperly construed the statute. I mean, jurisdiction is not a shrug. I mean, it's not that hard. It's not that hard. You could have asked Judge Halperin for permission to proceed with an interlocutory appeal. I don't know why we are straining now to figure out why you're here. Well, again, I would respectfully say that's more of the black car fund's burden as the appellant. But you're both agreeing that we have jurisdiction. And you're giving us three sort of, it seems to me, imperfect scenarios as to how we can get there. I understand that. Again. It doesn't take a village to get here. I mean, there's rules that you have to do, right? I appreciate that, Judge Sullivan. I think what it may ultimately – and, again, I'm not looking to make light, obviously, of important procedural considerations, but it may ultimately elevate form over substance if we would get here through another route, which I think Mr. Dolan is correct. We certainly could have. So for all intents and purposes, we are here. I did not contest his decision to bring us here because, quite frankly, three and a half years into this litigation, I would like finality. I would like a ruling that Judge Halperin's determination was correct, obviously, as I believe it was, and I want to be able to – All right. Well, can I ask you about that? Yeah, of course. So the statute says that the fund shall establish a proposed uniform percentage surcharge to be added to the invoices or billings for covered services and the credit payments for covered services. Correct. Now, the tips are on the invoices, right? You don't dispute that. The customers get invoiced for the tips. So why is that not a percentage surcharge that's added to the invoices? Well, for several reasons, Your Honor. First of all, it's not simply a function of whether it appears on the statement. The sales tax would appear on the statement. The congestion charge would appear on the statement. Cancellation fees would appear on the statement. I mean, do you think it would be – they wouldn't be able to do a surcharge that would include the sales tax? Is that obvious? I mean, I understand that they have some kind of agreement with the tax – Well, okay, but let's – But it's not obvious that they couldn't charge based on a percentage of the – including the sales tax. It is as a matter of statutory construction when it concerns the imposition of the tax. Your Honor, their position is we can raise the tax as a nonprofit corporation. We just chose not to. There's no evidence in this record – What do you mean raise the tax? I'm sorry? What do you mean they could raise the tax? Their position is that anything that appears on the statement, right, on the invoice for the covered service, they can attach the 2.5 percent surcharge to. They have taken the position in their appellate briefing that they're authorized to but not required to. That logic is ultimately false, Your Honor. They could not, as a nonprofit corporation, increase the sales tax on a black car livery transportation – Yeah, but that's just to say that they can't alter the tax that's being decided. So maybe there's some items on the invoice that they can't alter, but it doesn't mean that they can't charge a surcharge, which is what they're authorized to do based on what's in the invoice. Based on the billings? In fact, there's lots of discretion, right? Black car companies add all sorts of service charges to the invoice for tolls. Maybe they charge for tolls. Maybe they don't charge for tolls. Maybe they charge some kind of service fee or whatnot. You wouldn't dispute that the surcharge can apply to all of those fees, right? No. Again, Judge Menasci, the point is that it's the billings for the covered service. The covered service is the dispatch, pickup, transport, and discharge of the passenger. A gratuity has nothing to do with the covered service. It has nothing to do with the covered service? It doesn't. If I get a service and I leave a tip, it's because I appreciated the service, right? I mean, I'm paying for the service. No, with all due respect, Judge Menasci, I want to use Mr. Dolan's analogy because it's one that I would have offered had he not suggested it. Suppose that the legislature were to impose a 2.5 percent surcharge on restaurant meals to aid the hunger or food insecure. Suppose you went to the restaurant and you had a $100 meal and you left a $20 tip. What would your reaction be if the waiter came back and said, we have to impose this surcharge on your $100 meal for the meal that you enjoyed, but the $20 tip that you left, I'm sorry, Your Honor, but I need another 2.5 percent on top of that gratuity. Maybe I'd look at the statute and see whether that was offered. Well, correct. So what in the statute tells me whether it's offered? Because it's not a billing for the meal, right? The gratuity that can be left for a black card driver could be anything because the driver's a good conversationalist. So why isn't it a billing for the meal? So even in your hypothetical, like after I write down the tip in the restaurant, then they run the credit card or whatever, and I present it with a charge form that I'm supposed to sign, that is an invoice or a credit payment for the meal, isn't it? Is it not? No, I don't believe it is. So it includes it's a payment for the meal and for something else? No, it's a payment for the meal, and then it's an expression of appreciation. It's a gratuity. It's voluntary. It's not for the ingredients. It's not for the rent that's being partially absorbed. Well, it's clearly not those things, but, I mean, the definition of a tip is for it's money rendered for a service performed, right? For a service performed gratuitously after the fact, right? A tip that is left for a black car driver could be because of the driver's personal circumstances that he or she shares with them. If the black car companies had required a tip, right? Sometimes you go to a restaurant and they include a gratuity on the bill, right? So if there was a standard tip that everybody's required to pay, would that change your argument? I think that's different because that would be mandatory. That would be, you know, if a party of six is automatically assessed to 20% gratuity. That's not this case, however. This case is simply voluntary. But if that happened, then you would say that the tip was a payment for the covered service. I'm not sure what I would say. What I would do is I would go back to the statute. Well, I'm asking you what you would say. So if there was a mandatory tip, right, is it a payment for the covered service? Then I think it would be a closer call, but I don't think that's. . . Why would it be a closer call? Because it's mandatory as opposed to voluntary? Because it would more arguably be associated with the particular service that you've engaged. But you're paying for the same thing, right? You're paying for the performance of the service by the driver. So whether it's mandatory or voluntary, it's still a payment for the same thing, isn't it? And that's the focus of your argument. Well, we would have to go back to the enabling legislation, Your Honor. The legislation in this case doesn't say that they can impose it on gratuities. It doesn't say they can impose it on sales tax. And it's arbitrary the manner in which they've applied it, right? At the end of the day, the covered service, the billing, the same reaction that Judge Seibel had, which Judge Halpern had, which I would say 10 out of 10 average citizens would have, is when I use my Uber or Lyft or Via application, if I leave the Hall of Kravath and I summon a black car, there's no obligation for me to leave a gratuity or a tip. That's not the service for which I've engaged the transport or dispatch. But why? So what you're paying for when you leave a tip, why does that depend on whether there's an obligation to pay it, right? You could still be paying for the service even if you have some discretion as to how much to pay. I suppose I candidly don't understand the distinction that Your Honor is drawing in the context of this case. Well, you're saying you don't have to pay the gratuity. Well, fine, you don't have to pay the gratuity. But if you do, I mean, the question is what are you paying for? Well, but the— Can I ask you this other question? Because there was this debate in the briefs about deference and the expertise. So New York State usually defers to agencies that have operational expertise in the underlying matter. And here the state legislature authorized the fund to develop a formula for coming up with the surcharge. And so this question about whether the surcharge applies to tips or doesn't apply to tips seems to be something that has to be resolved in implementation. Why shouldn't we read that statute as the legislature saying, Well, to the extent that something like this has to be determined in implementation of the statute, we want the entity that we've authorized to implement the statute to make that kind of a call as opposed to a court making a separate decision. Well, for starters, it's not an administrative agency. It's a not-for-profit corporation. For second, the legislature— So does that matter? It does. In fact, they have the authority to develop a formula for the surcharge, and they issue a surcharge that ends up having the force of law? It does, Your Honor. It's also a function of the legislation enable them to develop a plan of operation only insofar as necessary to fund their operations. There's been no showing in this case that they— Well, I don't care about the plan of operation, but they formulate the surcharge, right? I mean, I care about it, but I'm focused on the surcharge. They get to come up with a formula for the surcharge, and after 30 days, that takes effect, right? And nothing in this case impairs their ability to set the surcharge, as I said. No, but I understand. My point is usually when an agency is implementing a statute and has the authority to issue, you know, interpretations that have the force of law, which I think the surcharge seems to be, we say that ambiguities should be resolved by that entity. Respectfully, I think Your Honor is conflating the setting of the surcharge with the elements to which the surcharge can properly be applied. I don't dispute that the agency can set the amount of the surcharge, as they have. They've raised the surcharge from 2.5% to 3%. So you're saying that the statute says that you can determine whether it's 2.5% or 3% and so on, but you can't determine 2.5% or 3% of what? You think that that's all fixed by the statute? No, you can't arbitrarily decide to what the surcharge applies. You cannot apply the surcharge to a voluntary tip, which effectively becomes a tax on a tip. You can apply it to the tolls. You can apply it to the cost of the transportation. But you can't apply it to the sales tax that's being set by another entity. But why would you apply it to the tolls? I mean, some companies don't charge separately for the tolls. Well, because that's what they've determined. I'm not arguing whether— Okay, that's exactly my point. So they've determined that you apply it to the tolls, whereas it's a debatable point. And so we tend to say, well, they're implementing the statute, and to the extent that it could go either way, we're going to defer to the agency that the legislature authorized to make that determination. So why is the toll payment different than the tip payment? Perhaps someone will challenge the toll payment. We're not here contesting the toll payment. We're only contesting the gratuity. If they're actually assessing the surcharge on a toll, effectively they're taxing that toll beyond the body's responsibility that's actually setting that toll in the first instance. So then my question is— I may be back, Your Honor, with another class action. So my question is this. over every item on the invoice, why doesn't it make sense to say, well, look, the legislature authorized the fund to come up with a formula for the surcharge, and so we defer to that. And it's a reasonable reading of the statute that says all the items on the invoice are subject to a surcharge. If we were in a framework where they got some degree of deference, would you dispute that it's possible to read the statute as authorizing a surcharge on all the items on the invoice? No, because I think that hypothetical knowing in practice the different components of the overall cost of using a black car service wouldn't allow them that discretion. And ultimately, Your Honor, I think Judge Halpern had it right when he said it's ultimately for the legislature to determine. If the legislature wanted to give the fund the ability, which I can't imagine it would— But that's the question, is whether the legislature did determine it. So send them back to the legislature. We're here because I have the ability to contest their interpretation of the statute. Every judge before whom I have stood, hopefully including the three of you, has agreed with my proposition. On the invoice that we have in the record, I noticed there's also an inclement weather fee, right? Is it also clear—like, would you also come back with another class action over the surcharge over the inclement weather fee? I'd have to make that determination separately if I thought the fee was assessed with the same predominance. You just made the argument that the tolls wouldn't be included because it's not part of the service. But inclement weather is also not part of the service. It could very well be that we have three class actions to pursue. Fortunately, I only have the one at hand today, which is the gratuity. Thank you. We've kept you well past your time. Thank you very much. Thank you very much, Your Honors. Happy holidays to you as well. Mr. Dolan, thank you. Mr. Dolan, you have two minutes of rebuttal. Thank you, Judge, and I'll try to be very brief. Frankly, I think the argument you just heard is a whole long argument that the statute doesn't mean what it says. It defines covered service. There's no question that if you apply the definition the legislature came up with, we still win this case. I know what an invoice is. They're in the ‑‑ I know what a credit statement is, a bill looks like. They're in the record. If you just use the ordinary language, meaning for terms that aren't defined in the statute, which are those, there's just no question here that the surcharge can be imposed on the invoice, the total invoice, not the top part, not a third, not ‑‑ the statute doesn't draw any of those distinctions. And so the issue is do you apply it as written and you accept the distinctions that the legislature chose to make and, more importantly, the ones it chose not to make, or do you come up with some judicially created definition that's completely unrelated to the statutory definition? The statute goes on about geography. They want to talk about items on an invoice where there's nothing in the statute that does that. Well, is your position that anything could be added to the invoice and the surcharge applied to that? So if they added all sorts of fees for things that are unrelated to the dispatch, would we say that you could apply the surcharge to those fees? I think there are actually two questions here, Judge. Do they have authority to say we're going to add a sunshine fee or something? Right. That would be an argument against the base company and its customer. It wouldn't really impact the fund. If it's on the invoice, we can charge the surcharge.  But once it's on the invoice, the fund has the authority to do a surcharge. That's correct. That's correct. And a lot of these, there are two different kinds of entities here. The traditional black car companies, which are the limos you see in New York, those all have agreements that are spelled out with the Cravats and the Chase Manhattans of the world, and they specify in some detail what can and can't be. Uber and Lyft and Via is a different animal entirely, and they have their own way of doing it. So there would be a distinction between those two kinds of things. Frankly, Judge, to me, the issue in the case, and frankly it's sadly one that didn't get a lot of briefing, is the jurisdictional issue. I hear the skepticism from the Court about ground number one, whether all that's left is a ministerial calculation. I think the better answer and the one I offer you is argument two. This really is an injunction. So you didn't waive the ability to appeal an injunction that was agreed to be withdrawn by the parties? No. A specific term of it was we preserved our right to appeal. Absolutely. Preserved your right to appeal. The issue is whether this is an injunction or whether this is a voluntary agreement between the parties that made an injunction unnecessary. No, I don't think so, because if it were unnecessary, there would be no order. We would just have what the district court originally was musing about. I won't deal with the injunction. We'll just have essentially a declaratory judgment, and I assume you'll abide by it. So once it became an order. I was on the district court. So if I issued an injunction, that's the same as the parties saying to me we reached an agreement, and I stamped it with so ordered, and it goes on the dock. Yes. Those are the same thing. When a judge orders something, that's not ministerial. Okay. And the fact that the parties agreed to this doesn't prevent them from appealing what they agreed to. No, no. I think there are many, and frequently. Well, these have all been interesting things to breathe. Yes. Of course, it would have been a lot easier to just probably go to Judge Halpern and say can we have an interlocutory appeal. I have no dispute with that one either, Judge, and I don't think it would take. If you conclude that. Well, you made a decision to do it this way, right? You could have said we're not going to change it unless we're ordered by the court, unless there is an injunction, right? Judge, I think the only real point there is that when we changed it after this ruling, we changed it formally. We don't say in the minutes it's because we're ordered to. No, no. I don't care about that. I'm talking about what you decided to do in front of the district court. You could have said we're not just going to abide by it. We're going to do it if the court orders us to do it, if there is an injunction. Okay. If that was in effect, well, that happened. I mean, in all respect, we don't take a ruling by the court that it would be illegal for you to charge a surcharge as kind of some comment of do whatever you feel like. We just didn't view it that way. Okay. But without a motion for a preliminary injunction, a judgment on liability would not have required you to do anything different. I agree with you totally, Judge, as a matter of form. So it seems to me this is a voluntary decision not to charge the surcharge pending an appeal, whatever that's going to be. If it was simply a stipulation that we're not subordinated, I think you'd be absolutely right. It's the court's ordering it that changes the whole thing. We don't have a choice after that. We really don't. Thank you. Thank you very much. Thank you both for your arguments. We'll reserve the session. Thank you.